# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2046-17T2

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

G.B.B.,

     Defendant-Appellant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF E.C.C.-F.
and D.J.C.-F.,

     Minors.

_____

          Argued May 22, 2019 – Decided June 10, 2019

          Before Judges Accurso, Vernoia and Moynihan.

          On appeal from Superior Court of New Jersey,
          Chancery Division, Family Part, Hudson County,
          Docket No. FG-09-0121-17.

Deric D. Wu, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Deric D. Wu, on the brief).

Julie Beth Colonna, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Jason Wade Rockwell, Assistant Attorney General, of counsel; Julie Beth Colonna, on the brief).

Todd S. Wilson, Designated Counsel, argued the cause for minor (Joseph E. Krakora, Public Defender, Law Guardian, attorney; Meredith Alexis Pollock, Deputy Public Defender, of counsel; Todd S. Wilson, on the brief).

PER CURIAM

This unfortunate guardianship matter returns to us following our reversal of a prior decision terminating defendant G.B.B.'s parental rights to her sons E.C.C.-F. and D.J.C.-F., N.J. Div. of Child Protection & Permanency v. G.C.-F., No. A-4462-12 (App. Div. April 24, 2014) (slip. op. at 2), and our dismissal of the Division's subsequent appeal of an interlocutory order dismissing the Division's second guardianship complaint filed in 2015, N.J. Div. of Child Protection & Permanency v. G.B., No. A-5604-14 (App. Div. April 22, 2016) (slip. op. at 3, 5). The boys are now eight and almost ten years old and have been in the care of their resource parents, defendant's cousin and her husband, since 2011. Defendant appeals from a new judgment entered

December 19, 2017 on the Division's third guardianship complaint, terminating her parental rights to both boys.

As counsel for defendant, who has represented her since the inception of this case, acknowledged at oral argument, there is no easy decision available to us. As defendant herself acknowledges, her sons are securely bonded to their resource parents and could not be returned to her at this point without severe and lasting harm to them. Mindful of that fact, she asks that we reverse the termination of her parental rights but that the boys remain in the resource parents' custody under a non-dissolution docket. Because the children's best interest requires the permanency a guardianship order provides, we affirm the termination of defendant's parental rights, allowing for the boys' adoption by the resource parents.

The sad history of this case is largely recounted in our 2014 opinion, G.C.-F., slip. op. at 2-29, and we will not repeat it here. We note only that defendant, a victim of parental abuse and neglect, including sexual abuse by her stepfather, lived in a series of foster placements from the time she was thirteen years old. Id. at 2. When the Division first encountered defendant as a parent, a dozen or so years after she aged-out of the foster care system, she had a history of depression, bipolar disorder and self-destructive behavior, and

had overcome a persistent substance abuse problem.  Id. at 3.  Notwithstanding those issues, and that she had recently lost her job as a security guard, the apartment in which she lived with her sixteen-month-old son was clean and well-stocked with food, and he appeared happy and healthy, and was up-to-date with his immunizations.  Id. at 3, 5-6.  Owing largely to a mistake by a Division screener, who erroneously reported that defendant had threatened to kill herself and the baby, the child was removed from her care, as was his brother born two months later.  Id. at 4, 6-7, 13.

Defendant's sons were ultimately placed with her cousin in Maryland in August 2011, when the older child was two and the younger, six months old.  Id. at 17.  Although defendant initially promoted the placement, relations between her and her cousin's family quickly soured.  Ibid.  Defendant's parental rights to her sons were terminated in May 2013.  Id. at 11.  We reversed in April 2014.  Id. at 2.  We concluded the trial court relied on incompetent evidence and its findings on the first and second prongs of the best interests standard were not supported by the record.  Id. at 35-40.  We remanded for further proceedings and directed that efforts to reunify defendant with her children be reinstated.  Id. at 32.

The remand did not proceed smoothly. The court held the Division in contempt for failing to arrange therapeutic visitation as previously ordered, and twice rejected the Division's renewed efforts to terminate defendant's parental rights, finding it had made insufficient efforts at reunification. The resource parents changed the boys' names and referred to defendant when speaking with them as "the woman with the baby who is going to take you away."[1] The court had to order the foster parents "not to influence these children in any way whatsoever against their mother, their biological mother." Following that order, the therapist supervising the visitation reported the boys refused to hug defendant. When the therapist asked why, the boys responded that the foster mother had told them not to hug her.

After two prior applications and an unsuccessful interlocutory appeal, the trial court finally approved the Division's permanency plan to terminate defendant's parental rights in August 2016. Following trial in 2017, a different judge concluded that although defendant would never intentionally harm her children, her two oldest sons had "suffered harm from not having a healthy, loving relationship with their mother." The judge further found defendant had

---

[1] Defendant's third child, born in July 2013, often accompanied her on visits with her older children. Defendant's third child remains in her care and is not a subject of this case or any other.

been unable to eliminate the harm over the long course of the litigation and that delaying permanent placement would prove "catastrophic" for these children. He concluded the Division's efforts at reunification were reasonable in light of the circumstances, including the "long delay, the long years of placement, the Appellate Division reversal and remand, the logistics of Maryland, the problems of the mother, [and] the problems of the children." The judge relied on the testimony of all the experts, including Dr. Figurelli who testified on behalf of defendant, that there was no significant attachment between defendant and her two older sons and that both were securely attached to the foster parents, in finding that termination of defendant's rights would not do more harm than good.

Although arguing that the Division caused the harm that befell her children by removing them from her without cause, that the foster parents, with the Division's acquiescence, sabotaged her efforts at reunification, and that the Division never provided her the services, particularly the recommended trauma-based therapy, she needed, defendant, as we first noted, acknowledges that her sons are securely bonded to their foster parents and that removing them from their care at this juncture would cause them serious and enduring harm. She accordingly does not ask that we return the children to

6

her, but instead requests that we reverse the termination order and continue custody with the foster parents under a non-dissolution docket. At oral argument, defendant's counsel emphasized defendant's love for her children, that she misses them and wishes to be permitted to write to them to convey both.

Fully cognizant of the several unfortunate circumstances marking this matter and of defendant's unswerving love and devotion to her sons, we affirm the order terminating her parental rights. At this point in time, there is no doubt that defendant's sons, now eight and almost ten, will suffer a greater harm from the permanent disruption of their relationship with their foster parents than from the termination of their parental ties to her. See In re Guardianship of K.H.O., 161 N.J. 337, 355 (1999). These boys' need for stability and permanency is paramount, and long-term foster care does not provide that for them. See id. at 360. The foster parents wish to adopt the boys and should be permitted to do so for the permanency adoption secures.

The continued contact defendant seeks to maintain with her sons, albeit limited, is not judicially enforceable, and thus beyond the court's power to order. See id. at 362. Any continued contact will be left entirely to the boys' adoptive parents.

A-2046-17T2

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2046-17T2